## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ISAIAS MANUEL GARCIA,

              Plaintiff

    v.

THE CITY OF HAZLETON, et al.,

              Defendants

CIVIL ACTION NO. 3:24-CV-00411

(MEHALCHICK, J.)

## MEMORANDUM

Before the Court is a motion to dismiss filed by the City of Hazleton ("Hazleton"), Johnathon A. Leonard ("Officer Leonard"), and Eric Hernandez ("Officer Hernandez," collectively, with Officer Leonard "Police Defendants," collectively, with Police Defendants and Hazleton, "Hazleton Defendants"). (Doc. 3). This action arises from the arrest and prosecution of Plaintiff Isaias Manuel Garcia ("Garcia") on February 8, 2020. (Doc. 1). On March 1, 2024, Garcia filed a complaint in the Court of Common Pleas of Luzerne County alleging claims against Hazleton Defendants, Omar Alexis Vargas ("Vargas"), and Brian Anthony Castillo ("Castillo"). (Doc. 1). On March 8, 2024, the case was removed to the Middle District of Pennsylvania. (Doc. 1). For the following reasons, Hazleton Defendants' motion to dismiss will be **GRANTED in part** and **DENIED in part**. (Doc. 3).

## I. BACKGROUND AND PROCEDURAL HISTORY

The following factual summary is taken from the complaint. (Doc. 1-2). On February 8, 2020, Vargas was driving a Dodge Ram owned by Castillo while Garcia was a passenger in the vehicle. (Doc. 1-2, ¶¶ 11-12). In Hazleton, Officer Leonard observed the Dodge Ram and reported that Vargas was driving erratically and speeding. (Doc. 1-2, ¶¶ 13-16). Officer Leonard activated the overhead lights and siren on his police cruiser to initiate a traffic stop

of the vehicle. (Doc. 1-2, ¶ 14). Varas did not stop the vehicle, instead speeding up in order to flee and initiating a "high speed chase through the crowded streets of Hazleton." (Doc. 1-2, ¶¶ 15-17). Officer Hernandez, who was also on duty, became involved in the chase. (Doc. 1-2, ¶ 19). At one point during the chase, Officer Leonard's cruiser and the Dodge Ram collided. (Doc. 1-2, ¶¶ 20-22). After this collision, Vargas sped away and the chase continued. (Doc. 1-2, ¶¶ 20-30). The chase ended when Vargas lost control of the Dodge Ram on an exit ramp, causing the vehicle to roll over several times before coming to a stop in a snowy field. (Doc. 1-2, ¶¶ 20-30). As the Dodge Ram was rolling over, Garcia was ejected from the vehicle and launched through the air before crashing into the snowy ground with his pants around his ankles. (Doc. 1-2, ¶¶ 31, 32). Arriving at the scene shortly after the crash, Police Defendants attempted to place Garcia under arrest. (Doc. 1-2, ¶¶ 33-34). Police Defendants grabbed Garcia, who lay limp and stuck in the snow, and attempted to place him in handcuffs. (Doc. 1-2, ¶¶ 34-37). These attempts were unsuccessful. (Doc. 1-2, ¶ 37). Officers Leonard and Officer Hernandez next withdrew a stun gun and tasered Garcia. (Doc. 1-2, ¶ 38). At this point, Garcia was lying face down in the snow in a state of medical distress. (Doc. 1-2, ¶ 38). Given the severity of his injuries, Garcia was eventually transported to Lehigh Valley Hospital in Allentown Pennsylvania, where he was booked for hip surgery and hospitalized for over two weeks. (Doc. 1-2, ¶¶ 39-40).

On March 1, 2024, Garcia filed the instant lawsuit and on March 8, 2024, the case was removed to this Court. (Doc. 1). In his complaint, Garcia alleges the following Counts: Count One – 42 U.S.C. § 1983: False Arrest against Officers Leonard and Hernandez; Count Two – 42 U.S.C. § 1983, Excessive Force Against Officers Leonard and Hernandez; Count Three – 42 U.S.C. § 1983, Malicious Prosecution against Officer Leonard; Count Four – 42 U.S.C.

1983, *Monell* Liability against City of Hazleton; Count Five – Assault against Officers Leonard and Hernandez; Count Six – Battery against Officers Leonard and Hernandez; Count Seven – False Arrest and False Imprisonment against Officers Leonard and Hernandez; Count Eight – Negligence Officers Leonard and Hernandez; Count Nine – Negligence against Vargas; and Count Ten – Negligent Entrustment against Castillo. (Doc. 1-2).

On March 25, 2024, Hazleton Defendants filed the instant motion to dismiss. (Doc. 3). On March 28, 2024, Hazleton Defendants filed a brief in support of their motion. (Doc. 4). On April 2, 2024, Garcia filed a brief in opposition to the motion to dismiss. (Doc. 6). The deadline to file a reply brief has passed. Accordingly, the motion has been fully briefed and is ripe for discussion.

## II.  LEGAL STANDARD

### A.  MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).

4

The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

### B. SECTION 1983

Hazleton Defendants are state actors for purpose of Section 1983. *See Kline ex rel. Arndt v. Mansfield*, 454 F. Supp. 2d 258, 262 (E.D. Pa. 2006). To state a claim under Section 1983, a plaintiff must meet two threshold requirements. Accordingly, in this case Garcia must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). If a defendant fails to act under color of state law when engaged in the alleged misconduct, a civil rights claim under [S]ection 1983 fails as a matter of jurisdiction, *Polk Cty. v. Dodson*, 454 U.S. 312, 315 (1981), and there is no need to determine whether a federal right has been violated. *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988); *see also Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) (citing *Rode*, 845 F.2d at 1207). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207; *accord Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293-96 (3d Cir. 1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of

participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207.

With respect to punitive damages for a Section 1983 violation, this remedy is only available "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30 (1983). Regarding federal civil rights claims, "reckless indifference" refers to the defendant's knowledge of the illegality of his actions, not the egregiousness of his actions. *Alexander v. Riga*, 208 F.3d 419, 431 (3d Cir. 2000) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)).

## III. DISCUSSION

Hazleton Defendants argue that Garcia has failed to plead claims for false arrest, false imprisonment, malicious prosecution, negligence, assault, battery, and *Monell* liability. (Doc. 4, at 2). Hazleton Defendants also aver Police Defendants are entitled to qualified immunity and immunity under the Pennsylvania Political Subdivision Tort Claims Act. (Doc. 4, at 2). Garcia maintains that he has adequately plead each claim in his complaint and that these immunities are inapplicable at this juncture. The Court will address each claim in turn.

### A. FEDERAL AND STATE FALSE ARREST CLAIMS

In his complaint, Garcia brings claims for false arrest and false imprisonment under state law and Section 1983. (Doc. 1-2, ¶¶ 80-83, 109-11). Hazleton Defendants assert that Garcia's false arrest claims must be dismissed because they had probable cause to arrest Garcia. (Doc. 4, at 10). In support of this position, Hazleton Defendants point to an incident report attached as an exhibit report as well as Garcia's warrant for arrest. (Doc. 4, at 12-13; Doc. 4-2). Garcia argues that Hazleton Defendants lacked probable cause to arrest him

6

because they failed to investigate or interview him or others before his arrest, and because he did no wrongdoing. (Doc. 6, at 14). Garcia states, "[n]ot knowing who committed the crimes, [Officers] Leonard and Hernandez simply arrested everyone." (Doc. 6, at 16).

"[A]n arrest requires probable cause." *Arditi v. Subers*, 216 F.Supp.3d 544, 552 (E.D. Pa. 2016). The Fourth Amendment establishes "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause...." U.S. CONST. Amend. IV. "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012). Pennsylvania state law false arrest claims and federal constitutional false arrest claims may be analyzed together under the Fourth Amendment, as they are "co-extensive as to both elements of proof and elements of damages." *Barasky v. Dent*, No. 4:21-CV-02041, 2022 WL 14915557, at *5 (M.D. Pa. Oct. 25, 2022). If probable cause is established with respect to any one of the charges for which a plaintiff is arrested, a claim of false arrest under both federal and state law must fail. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007); *see also Etzle v. Glova*, No. 3:22-CV-00139, 2023 WL 2578254, at *8 (M.D. Pa. Mar. 20, 2023); *see also Langford v. Gloucester Twp. Police Dep't*, 787 F. App'x 120, 122 (3d Cir. 2019) ("Probable cause is a complete defense to false-arrest and malicious prosecution claims."). Furthermore, to state a claim for false imprisonment under Pennsylvania law, a plaintiff must allege that (1) he was imprisoned, and (2) his imprisonment was unlawful. *Glaspie v. Cty. of Gloucester*, No. CV 15-7691, 2018 WL 4179461, at *4 (D.N.J. Aug. 31, 2018). When "the police lack probable cause to make an arrest, the arrestee has a claim under [Section] 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman*, 47 F.3d at 636.

"The plaintiff has the burden of proving lack of probable cause and despite the difficulty of establishing a negative, the requirement is rigidly enforced." *Martinez v. E.J. Korvette, Inc.*, 477 F.2d 1014, 1016 (3d Cir. 1973). Probable cause exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2022) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). However, "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). "Rather, the court will evaluate generally the circumstances at the time of the arrest to decide if the officer had probable cause for his action[.]" *Adams*, 407 U.S. at 149; *see Unterberg v. Magluilo*, No. CV 3:20-410, 2021 WL 1123329, at *4 (M.D. Pa. Mar. 24, 2021). That said, "[g]enerally, the question of probable cause in a [S]ection 1983 damage suit is one for the jury." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000); *see also Lawson v. City of Coatesville*, 42 F. Supp. 3d 664, 674 (E.D. Pa. 2014).

As argued by Hazleton Defendants, "[i]n assessing probable cause, police officers are permitted to weigh evidence and make credibility determinations, even if those decisions later prove incorrect." (Doc. 4, at 12); *see Eckman v. Lancaster City*, 742 F. Supp. 2d 638, 650 (E.D. Pa. 2010). Garcia's complaint alleges that after the high speed car chase, Police Defendants, without knowing who was driving, placed Garcia under arrest without probable cause or reasonable suspicion. (Doc. 1-2, ¶¶ 34, 49-51). At the time of Garcia's arrest, the complaint suggests he was in serious medical distress and that Police Defendants "did not even attempt to interview" him. (Doc. 1-2, ¶¶ 38, 52). The complaint further alleges that "[n]either [Officer]

Leonard nor [Officer] Hernandez did any investigation as to the identity of the driver, aside from possibly interviewing [] Vargas." (Doc. 1-2, ¶ 51).

According to the complaint, Officer Leonard charged both Vargas and Garcia with four counts of conspiracy to commit aggravated assault, conspiracy to flee and attempt to elude police, two counts of conspiracy for recklessly endangering another person, conspiracy to commit a hit and run, conspiracy to possess marijuana for personal use, conspiracy to possess drug paraphernalia, conspiracy to commit reckless driving and conspiracy to commit careless driving. (Doc. 1-2, ¶ 54). Garcia was also charged with driving with a suspended license and resisting arrest and disorderly conduct. (Doc. 1-2, ¶¶ 56, 57).

The complaint continues that all these charges against Garcia were dismissed by the Luzerne Court of Common Pleas for lack of evidence. (Doc. 1-2, ¶ 59). On December 16, 2021, the Luzerne Court of Common Pleas considered a petition for writ of habeas corpus filed by Garcia. (Doc. 1-2, ¶ 58). The Luzerne Court of Common Pleas granted the petition, finding "it is evident that the Commonwealth failed to establish a prima facie case against [Garcia] on any of the charges against him." (Doc. 1-2, ¶ 59).

"For [an officer's] belief to be reasonable under probable cause, it cannot be based on inadequate investigation of the circumstances of the alleged criminal conduct." *Rosario v. Lynch*, 2017 WL 4098709, at *5 (E.D. Pa. Sept. 15, 2017) (citations omitted); *see also Pinkney v. Meadville, Pennsylvania*, 648 F. Supp. 3d 615, 637 (W.D. Pa. 2023), *aff'd*, 95 F.4th 743 (3d Cir. 2024). In *Chiaverini v. City of Napoleon, Ohio*, the Supreme Court recently held that, in cases where a suspect is charged with numerous crimes, the fact that one of the underlying charges is valid does not categorically bar a Fourth Amendment claim under Section 1983 that is based on both valid and invalid charges. *Chiaverini v. City of Napoleon, Ohio*, 602 U.S.

556 (2024). The Supreme Court clarified that "if an invalid charge—say, one fabricated by police officers—causes a detention either to start or to continue, then the Fourth Amendment is violated. And that is so even when a valid charge has also been brought[.]" *Chiaverini*, 602 U.S. at 563. This logic readily applies to a false arrest claim, which also turns on whether officers had probable cause.

Garcia was charged with a number of crimes, some readily related to the high-speed chase and others not so much. For instance, drawing all reasonable inferences in favor of Garcia and reading the factual allegations in the complaint as true, Hazleton Defendants did not have probable cause to arrest Garcia with resisting arrest and/or disorderly conduct because at the time of his arrest. Garcia was incapacitated with multiple broken bones and therefore physically unable to comply with Hazleton Defendants' commands as they attempted to handcuff him. (Doc. 1-2, ¶¶ 34-36, 42, 57). Additionally, none of the allegations in the complaint support Gracia's charges for the conspiracy to possess marijuana for personal use or the conspiracy to possess drug paraphernalia. (Doc. 1-2, ¶ 54). Similarly, without conducting any inquiry into who was driving, Hazleton Defendants charged both Garcia and Vargas with driving with a suspended license. (Doc. 1-2, ¶ 56); *see Luck v. Mount Airy No. 1, LLC*, 901 F. Supp. 2d 547, 556-56 (M.D. Pa. 2012) (finding officers lacked probable cause where they did not question the plaintiffs or pursue any other investigation.). Thus, in consideration of *Chiaverini v. City of Napoleon, Ohio*, even if Police Defendants had probable cause to bring some of the charges they did against Garcia, they were not entitled to pursue additional charges against Garcia for which they did not have probable cause. 602 U.S. at 563. Such action could result in liability under the Fourth Amendment.

Hazleton Defendants attach an incident report to support their position that they did have probable cause to pursue charges against Garcia, but the Court cannot consider extrinsic evidence at this juncture, aside from public record. The Third Circuit has suggested that, at the motion to dismiss stage, a district court cannot rely on a police report to determine whether officers had probable cause to effectuate an arrest. *See Kwanzaa v. Tell*, No. 21-1939, 2022 WL 16756334, at *3 (3d Cir. Nov. 8, 2022). "When evaluating the possible dismissal of a complaint, it was appropriate for the District Court to consider 'the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record.'" *Kwanzaa*, 2022 WL 16756334, at *3 (quoting *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020)). Police reports do not typically fall within this exception. *See Hadesty v. Rush Twp. Police Dep't*, No. CV 3:14-2319, 2016 WL 1039063, at *4 (M.D. Pa. Mar. 15, 2016); *see also Heller v. Hammerle*, No. 2:20-CV-01656, 2021 WL 3426807, at *12 n.9 (W.D. Pa. June 30, 2021) *report and recommendation adopted*, No. CV 20-1656, 2021 WL 3419678 (W.D. Pa. Aug. 5, 2021). "Allowing police reports or criminal complaints and their contents to fall within the public record exception under Rule 12(b)(6) would likely incentivize improper bolstering by police officers to protect against and prevent litigation." *Hadesty*, 2016 WL 1039063, at *4. As such, the Court will not consider the incident report filed by Hazleton Defendants at this time.

Because the complaint sufficiently alleges that Police Defendants lacked probable cause to arrest Gracia, at least for some of the charges listed, the Court will **DENY** Hazleton Defendants' motion to dismiss Garcia's federal and state law claims for false arrest and false imprisonment, Count One and Count Seven of the complaint. (Doc. 1-2, ¶¶80-83, 109-11; Doc. 3); *Unterberg*, 2021 WL 1123329, at *4 (declining to dismiss false arrest and malicious prosecution claims where the parties dispute whether law enforcement had probable cause to

pursue charges). Hazleton Defendants, however, will not be precluded from rearguing this issue with the benefit of discovery and in a more particularized manner that addresses each of the charges filed against Garcia. This outcome is consistent with this Court's duty "to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984); *see also Price v. Zirpoli*, No. 3:11-CV-1330, 2016 WL 3876442, at *5 (M.D. Pa. Jan. 20, 2016), *report and recommendation adopted*, No. 3:11-CV-1330, 2016 WL 3876646 (M.D. Pa. July 15, 2016).

B. Malicious Prosecution

Hazleton Defendants argue that Garcia's Section 1983 malicious prosecution claim against Officer Leonard must be dismissed because Police Defendants did not initiate the proceedings against Garcia and because they had probable cause to prosecute Garcia. (Doc. 4, at 13). Garcia maintains that he has sufficiently pled a claim for malicious prosecution. (Doc. 6, at 20-22). Having already considered the parties arguments regarding probable cause *supra*, the Court will focus its analysis on whether Leonard initiated the criminal proceedings against Garcia.

To state a claim for malicious prosecution, a plaintiff must satisfy the common law elements of the tort. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000). Thus, to prevail on a Fourth Amendment malicious prosecution claim, Garcia must allege "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a

legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir. 2003). A law enforcement officer may be liable for malicious prosecution where he "influenced or participated in the decision to institute criminal proceedings." *Halsey v. Pfeiffer,* 750 F.3d 273, 297 (3d Cir. 2014) (citing *Sykes v. Anderson*, 625 F.3d 294, 308–09, 317 (6th Cir. 2010).

A Fourth Amendment malicious prosecution claim is "intended to redress [the] deprivation of liberty accompanying prosecution, not prosecution itself." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005); *see Gallo*, 161 F.3d at 222–24 (citing *Albright v. Bright*, 510 U.S. 266, 278-79 (1994)). The constitutional component of the claim also requires a showing of a loss of liberty beyond simply showing an unlawful arrest. *Merkle*, 211 F.3d at 792 (citing *Gallo v. City of Philadelphia*, 161 F.3d 217, 225 (3d Cir. 1998)). "The claim arises from the prosecution, not the arrest. The alleged seizure must emanate from the prosecution, and 'must occur chronologically after the pressing of charges.'" *Roberts v. Caesar's Entertainment, Inc.*, 72 F. Supp. 3d 575, 581 (E.D. Pa. 2014) (citing *Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 659 (W.D. Pa. 2010)). It therefore follows that events that proceeded the initiation of prosecution, such as those between the initial encounter with the police and the filing or initiation of formal charges, are not the proper focus of or basis for a malicious prosecution claim. *Roberts*, 72 F. Supp. 3d at 581.

Garcia argues that Officer Leonard may be held liable for malicious prosecution because he participated in the decision to bring criminal charges against Garcia by swearing to a criminal complaint to charge Garcia. (Doc. 6, at 21). For malicious prosecution claims implicating law enforcement, a plaintiff must plead facts demonstrating that the officers concealed or misrepresented material facts such that they "influenced or participated in the

decision to institute criminal proceedings[.]" *Halsey*, 750 F.3d at 297. These facts need not be presented directly to the district attorney, attorney general, or prosecutor, but must somehow influence the State's decision to institute criminal proceedings. *See Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 380 (E.D. Pa. 2018). Here, the complaint alleges that Officer Leonard "file[d] baseless charges against [] Garcia absent any investigation." (Doc. 1-2, at 10). In his brief, Garcia argues Officer Leonard omitted material facts in his affidavit of probable cause, however, the complaint makes no mention of an affidavit of probable cause submitted by Officer Leonard. (Doc. 6, at 22). The complaint also does not contain factual averments supporting Garcia's argument that Officer Leonard influenced or participated in the decision to institute criminal proceedings against Garcia beyond the conclusory allegation that Officer Leonard initiated a criminal proceeding against Mr. Garcia, resulting in his arrest and prosecution with malice and for an improper purpose. (Doc. 1-2, ¶¶ 88-90); *Halsey*, 750 F.3d at 297. For instance, there are no allegations that Officer Leonard knowingly provided a neutral magistrate or prosecutor with false information. *See Merrero v. Micewski*, No. CIV. A. 96-8534, 1998 WL 414724, at *6 (E.D. Pa. July 22, 1998) ("A police officer may only be held to have 'initiate' a criminal proceeding if he knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion."); *cf. Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 667 (W.D. Pa. 2010) ("Thus, based. . . the fact that Plaintiffs have pled that the Defendant Officers falsified the affidavit of probable cause, Plaintiffs should not be precluded, at this stage of the litigation, from bringing a state malicious prosecution claim[.]"). Because Garcia has failed to allege facts in support of his broad allegation that Officer Leonard instituted criminal charges against him for an improper purpose, his malicious prosecution claim cannot survive. Hazleton Defendant's motion to

dismiss is therefore **GRANTED** on this basis. (Doc. 3); *see Thompson v. City of Williamsport*, No. 4:22-CV-01159, 2023 WL 8005306, at *7 (M.D. Pa. Nov. 17, 2023) (finding plaintiff had failed to meet their burden as to a malicious prosecution claim where the complaint "fails to specify what information was knowingly incomplete, misleading or false, when that information was provided, and who among the [] parties listed provided it. On a motion to dismiss, [Plaintiff] need not prove all of this, but he must at least reform his allegation so that it is more than a 'threadbare recital[ ] of the elements of [this] cause of action.'"). Garcia's malicious prosecution claim, as asserted in Count Three of the complaint, is **DISMISSED without prejudice**. (Doc. 1-2, ¶¶ 88-95).

## C. *Monell* Liability

In Count Four of the complaint, Garcia alleges a *Monell* claim against Hazleton. (Doc. 1-2, ¶¶ 96-102). Hazleton Defendants argue that Garcia has failed to allege facts in support of his *Monell* claim, and more specifically, that Garcia has failed to identify a constitutional violation associated with any policy maintained by Hazleton. (Doc. 4, at 16). Garcia responds that he has satisfied his burden by alleging Officers "Leonard and Hernandez operated under long standing custom and operating procedures within Hazleton." (Doc. 6, at 25). Garcia goes on to assert that Hazleton may be held liable under *Monell* because it "ratified Leonard's and Hernandez's high speed chase for traffic violations, which resulted in serious injury to a person who was not driving the car being chased." (Doc. 6, at 25).

While municipalities and other local governments are considered "persons" for purposes of Section 1983 liability, they cannot be held responsible for every constitutional tort inflicted by their employees. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Municipalities are responsible only for "their *own* illegal

acts" and are not subject to *respondeat superior* liability. *Connick*, 563 U.S. at 62 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). To bring a Section 1983 claim against a municipality, or what is known as a *Monell* claim, the plaintiff must show that "the alleged constitutional transgression implements or executes a policy, regulation[,] or decision officially adopted by the governing body or informally adopted by custom." *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citation omitted). In other words, a plaintiff can establish Section 1983 municipal liability in two ways: policy or custom. *Watson v. Abington Township*, 478 F.3d 144, 155 (3d Cir. 2007). The Third Circuit has explained that to prove liability, the plaintiff must establish that the municipal policy or custom was itself unconstitutional or was the "moving force" behind the constitutional deprivation. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citation omitted). Thus, to prevail on a *Monell* claim, a plaintiff must identify the challenged policy or custom, demonstrate proper attribution to the public entity, and show a causal link between the execution of the policy or custom and the injury suffered. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).

Garcia maintains that "Hazleton had a custom of permitting its officers to engage in high speed chases for minor offenses, including traffic offenses, and to put the public at risk by doing so." (Doc. 6, at 26). Further, that by failing to discipline Police Defendants, Hazleton ratified their actions. (Doc. 6, at 25). The complaint alleges that "the Hazleton Police Department has standard operating procedures relating to vehicle pursuits (the "SOP")." (Doc. 1-2, ¶ 66). Pursuant this SOP, the complaint alleges that Police Defendants' supervisor authorized them "to continue the pursuit even as it became apparent that [Officers] Leonard and Hernandez' reckless pursuit endangered [] Garcia and the public." (Doc. 1-2, ¶ 72). To

further support that Hazleton maintains a dangerous policy, Garcia cites two separate incidents in which Hazleton police pursuits have resulted in injury. (Doc. 1-2, ¶¶ 75, 76) However, as argued by Hazleton Defendants, Garcia fails to allege a constitutional right which has been systematically violated by Hazleton maintaining their SOP policy. (Doc. 4, at 18). Without an alleged constitutional violation directly tied to the SOP, the complaint fails to support that Hazleton's maintenance of the policy was a force in the infringement of Garcia's constitutional rights.[1] *Monell*, 436 U.S. at 694. Simply alleging the SOP is unconstitutional is not enough. To sufficiently allege a *Monell* claim against Hazleton, Garcia must have alleged an "affirmative link" between the SOP and the abridgement of Garcia's Fourth Amendment rights, and that the policy itself was the proximate cause of his injuries. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 809 (1985)*; see Randolph v. Turgeon,* No. 1:21-CV-316, 2022 WL 22209559, at *5 (M.D. Pa. May 5, 2022), *report and recommendation adopted*, No. 1:21-CV-316, 2022 WL 22001377 (M.D. Pa. June 9, 2022).

---------------------

[1] The Court acknowledges that the complaint does include the following allegation: "Defendant Hazleton's unconstitutional policies or customs led to deprivations, under color of state law, of rights guaranteed to Mr. Garcia under the Fourth and Fourteenth Amendments of the United States Constitution." (Doc. 1-2, ¶ 101). The Court finds this allegation insufficient because, even in the context of the broader allegations therein, the complaint fails to connect Hazleton's maintenance of the SOP, the only policy detailed in the complaint, to these constitutional violations. Instead, in an insufficiently conclusory manner, the complaint alleges that Hazleton has a policy or custom of using excessive force and investigating suspected crimes without probable cause and arresting suspects without probable cause. These actions cannot "'fairly be said to represent official policy,' warranting the imposition of municipal liability" without factual averments linking the SOP policy described in the complaint to these alleged constitutional violations. *McTernan v. City of York, PA*, 564 F.3d 636, 596 (3d Cir. 2009) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1985)). Because Garcia will be granted leave to amend his complaint, the Court expects he will be able to remedy this deficiency by clarifying how the SOP policy directly caused infringement of Garcia's constitutional rights.

As for Garcia's argument that by failing to discipline Officers Leonard and Hernandez Hazleton ratified their actions, the Court finds this allegation alone to be insufficient for Garcia to meet his burden. Again, without a more clear link between a challenged policy or custom and the alleged constitutional violations, Garcia's argument fails. Typically, a single incident like the one before the Court is insufficient to show a municipal policy or custom. *Tuttle*, 471 U.S. at 823-34 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). "[T]he failure to discipline a single employee on one occasion does not evince any broader policy or custom on the part of [Hazleton]." *Gregor v. Johnsen, No. 1:14-CV-219, 2017 WL 11368374, at \*8 (M.D. Pa. Nov. 3, 2017)*, *report and recommendation adopted*, No. 1:14-CV-00219, 2019 WL 3549603 (M.D. Pa. Aug. 5, 2019); *see also Meadows v. Se. Pennsylvania Transportation Auth.*, No. CV 16-2074, 2016 WL 6495127, at \*4 (E.D. Pa. Nov. 2, 2016) ("[T]his single instance of failing to discipline is not sufficient to show a policy or custom of such failures."); *see also Hojnowski v. Berks Cty.*, No. CIV.A. 13-5618, 2015 WL 400503, at \*2 n.12 (E.D. Pa. Jan. 28, 2015) ("[T]he failure to discipline an individual, after the fact, for committing a constitutional violation cannot be considered a cause of that same constitutional violation."). Even considering the two additional high speed chase incidents described in the complaint, Garcia's pleading falls short because there are no facts establishing that the policy at issue deprived Garcia, or others subject to the policy, of their constitutional rights. Hazleton Defendants' motion to dismiss will therefore be **GRANTED** on this basis. (Doc. 3.). Garcia's *Monell* claim, Count Four of the complaint, is

**DISMISSED without prejudice**.[2] (Doc. 1-2, ¶¶ 96-102); *see JACQUELINE RIOS, Plaintiff, v. BERKS COUNTY CHILDREN & YOUTH SERVICES, et al., Defendants. Additional Party Names: Rebecca Mill*, No. 24-CV-5235, 2024 WL 4567289 (E.D. Pa. Oct. 24, 2024) (dismissing a *Monell* claim where the complaint contained no allegations supporting the conclusion that Plaintiff's rights were violated because of the Defendant-County's policy or custom).

    D.  STATE LAW ASSAULT AND BATTERY

       In Count Five and Count Six of the complaint, Garcia brings assault and battery claims against Police Defendants. (Doc. 1-2, ¶¶ 103-05, 106-08). Hazleton Defendants argue that Garcia's claims for assault and battery necessarily fail because they are premised on Garcia's insufficient pleading of his malicious prosecution and false arrest claims. (Doc. 4, at 19). Garcia responds that "[b]esides the fact that the claims of false arrest and malicious prosecution are valid, they have little or nothing to do with claims of assault or of battery." (Doc. 6, at 27). For the following reasons, this Court agrees.

       Under Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of*

---

[2] Garcia indicates that "facts alleged [in relation to his *Monell* claim] are more than sufficient to state a claim against individual [Officers] Leonard and Hernandez under the state created danger theory." (Doc. 6, at 23). However, he continues that he "will not amend the Complaint now to add this as a separately enumerated claim, so that the Court can address defendants' multiple arguments that not a single claim has been pled. Upon the Court's decision in defendants' current motion to dismiss, Mr. Garcia will seek leave to amend the complaint to explicitly add a state created danger claim for relief against Leonard and Hernandez for engaging in a high speed chase because of alleged traffic violations." (Doc. 6, at 23 n. 3). Because the Court will grant Garcia leave to amend, he will be able to assert his state created danger claim within his amended complaint.

*Pittsburgh*, 641 A.2d 289, 293 (1994) (quoting Cohen v. Lit Brothers, 70 A.2d 419, 421 (1950)). "A police officer may be held liable for assault and battery when the force used in making an arrest is unnecessary or excessive." *Minor v. Cumberland Twp.*, 258 F. Supp. 3d 518, 531-32 (W.D. Pa. 2017). In making a lawful arrest the police may use "such force as is necessary under the circumstances to effectuate the arrest." *Campbell v. Balon*, No. 4:16-CV-00779, 2017 WL 2880856, at *15 (M.D. Pa. July 6, 2017). Whether a police officer's conduct constitutes an assault and battery is therefore determined based on the reasonableness of the force, and so "[a] claim brought under Pennsylvania law for excessive force by a police officer is a claim for assault and battery." *Campbell*, 2017 WL 2880856 at *15.

In Count Two of the complaint, Garcia includes a well pled claim for excessive force, which is not challenged by Hazleton Defendants. (Doc. 1-2, ¶¶ 84-87). In support of this allegation, the complaint provides that while lying face down in the snow with several broken bones, Officer Leonard and Hernandez used a stun gun taser on Garcia. (Doc. 1-2, ¶¶ 33-39). At the time the stun gun was used, Garcia was in such medical distress that he was unable to comply with orders to place his hands behind his back. (Doc. 1-2, ¶¶ 34-39). These allegations are sufficient to meet Garcia's burden as to his excessive force claim. Accordingly, because "[a] claim brought under Pennsylvania law for excessive force by a police officer is a claim for assault and battery," Garcia has met his burden as to his assault and battery claims against Police Defendants. *Campbell*, 2017 WL 2880856 at *15; *see also Dunn v. Tunkhannock Twp.*, No. 3:20-CV-00515, 2021 WL 1122994, at *4 (M.D. Pa. Mar. 24, 2021). Hazleton Defendants' motion to dismiss is therefore **DENIED** as it relates to Garcia's assault and battery claims, Count Five and Count Six of the complaint. (Doc. 1-2, ¶¶ 103-05, 106-08; Doc. 3); *see Torres v. Allentown Police Dep't*, No. CIV.A. 13-3066, 2014 WL 4081477 (E.D. Pa. Aug.

18, 2014) (denying a motion to dismiss assault and battery charges based on the use of excessive force by police officers where the excessive force claim as sufficiently pled).

### E.  STATE LAW NEGLIGENCE

Hazleton Defendants argue that Garcia's negligence claim against Police Defendants fails because the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA") provides them immunity for the state law claims. (Doc. 4, at 20). The PSTCA provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S.A. § 8541. There are certain limited exceptions set forth in 42 Pa. C.S.A. § 8542 which provides that local agencies and their employees are liable only for negligent acts falling into one of the following categories: (1) vehicle liability; (2) care, custody or control of personal property; (3) care, custody or control of real property; (4) dangerous conditions of trees, traffic controls, or street lights; (5) dangerous conditions of utility services facilities; (6) dangerous conditions of streets; (7) dangerous conditions of sidewalks; (8) care, custody, or control of animals; and (9) sexual abuse. *See* Pa. C.S. § 8542. Hazleton Defendants aver that Garcia has failed to allege any of these exceptions apply in this case. (Doc. 4, at 20). Garcia answers that because immunity is an affirmative defense, an exception need not be pled in his complaint. (Doc. 6, at 28). Even so, Garcia continues that an exception to immunity does apply in this case and cites Section 8542(b)(1), which provides in pertinent part:

> The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: (1) Vehicle liability – The operation of any motor vehicle in the possession or control of the local agency, provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer.

Section 8542(b)(1); (Doc. 6, at 28-29).

According to Garcia, this exception applies because he has alleged that Garcia was not the driver of the Dodge Ram, not fleeing from Police Defendants, and not actively resisting arrest. (Doc. 6, at 29). While the Court is inclined to agree, the issue of PSTCA immunity would be better resolved after discovery. Therefore, Hazleton Defendants' motion to dismiss Garcia's negligence claim against Police Defendants is **DENIED**. (Doc. 1-2, ¶¶ 112-17; Doc. 3).

  F.  QUALIFIED IMMUNITY

Hazleton Defendants argue that Police Defendants are entitled to qualified immunity. (Doc. 4, at 20-21). Hazleton Defendants' argument is as follows:

> Plaintiff asserts that the Defendant officers violated the United States Constitution, but Plaintiff has failed to properly plead facts supportive of these causes of action as more particularly argued above. Therefore, since Plaintiff failed to properly plead constitutional violations as to the Defendant officers, they are entitled to qualified immunity.

> (Doc. 4, at 20-21).

Garcia identifies this argument "half-hearted." (Doc. 6, at 30). According to Garcia, Hazleton Defendants "base their argument simply on their prior arguments that Mr. Garcia did not properly plead constitutional violations." (Doc. 6, at 30). The Court agrees with Garcia's assessment of Hazleton Defendants' argument, which lacks specificity and focus. Because the Court finds that Garcia has sufficiently pled many of the constitutional violations detailed in his complaint, particularly his excessive force claim which Hazleton Defendants do not challenge and his false arrest claim, the Court will **DENY** Hazleton Defendants' motion to dismiss on the basis of qualified immunity without prejudice, as the Court is willing to revisit this issue after an amended complaint is filed and when presented with fully developed arguments. (Doc. 3).

## IV.  LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Here, each claim that the Court will dismiss will be dismissed without prejudice. Accordingly, a curative amendment would be neither futile nor inequitable. Garcia will thus be granted leave to file an amended complaint to cure the deficiencies detailed in this memorandum, and to assert a state-created danger claim.

## V.  CONCLUSION

For the foregoing reasons, Hazleton Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. (Doc. 3). Hazleton Defendants' motion to dismiss is **GRANTED** as to Count Three, Garcia's malicious prosecution claim, and Count Four, Garcia's *Monell* claim, and these claims are thus **DISMISSED without prejudice**. (Doc. 1-2, ¶¶ 88-95, 96-102; Doc. 3). Hazleton Defendants' motion is **DENIED** as to their immunity claims and Garcia's claims for false arrest, false imprisonment, assault, battery, and negligence, Counts One, Five, Six, Seven, and Eight. (Doc. 1-2, at 16-23; Doc. 3). Garcia is granted leave to file an amended complaint within 21 days from the date of this filing, on or before **December 31,, 2024**. An appropriate Order follows.

Dated: December 10, 2024                    *s/ Karoline Mehalchick*
                                            **KAROLINE MEHALCHICK**
                                            **United States District Court Judge**