UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ISAIAS MANUEL GARCIA,

                Plaintiff,

    v.

THE CITY OF HAZLETON, et al.,

                Defendants.

CIVIL ACTION NO. 3:24-CV-00411

(MEHALCHICK, J.)

**MEMORANDUM**

Before the Court is a motion to dismiss filed by the City of Hazleton ("Hazleton"), Johnathon A. Leonard ("Officer Leonard"), and Eric Hernandez ("Officer Hernandez," collectively, with Officer Leonard "Police Defendants," collectively, with Police Defendants and Hazleton, "Hazleton Defendants"). (Doc. 16). This action arises from the arrest and prosecution of Plaintiff Isaias Manuel Garcia ("Garcia") on February 8, 2020. (Doc. 1). On March 1, 2024, Garcia filed a complaint in the Court of Common Pleas of Luzerne County alleging claims against Hazleton Defendants, Omar Alexis Vargas ("Vargas"), and Brian Anthony Castillo ("Castillo"). (Doc. 1). On March 8, 2024, the case was removed to the Middle District of Pennsylvania. (Doc. 1). The operative amended complaint was filed on December 12, 2024. (Doc. 14). For the following reasons, Hazleton Defendants' motion to dismiss will be **GRANTED in part** and **DENIED in part**. (Doc. 16).

I.  **BACKGROUND AND PROCEDURAL HISTORY**

The following factual summary is taken from the amended complaint. (Doc. 14). On February 8, 2020, Vargas was driving a Dodge Ram owned by Castillo. (Doc. 14, ¶¶ 12-13). Garcia was a passenger in the vehicle. (Doc. 14, ¶¶ 12-13). In Hazleton, Officer Leonard observed the Dodge Ram and reported that Vargas was driving erratically and speeding. (Doc.

14, ¶¶ 14-15). Officer Leonard activated the overhead lights and siren on his police cruiser to initiate a traffic stop of the vehicle. (Doc. 14, ¶ 15). Vargas did not stop the vehicle, but instead sped up in order to flee, thus initiating a "high speed chase through the crowded streets of Hazleton." (Doc. 14, ¶¶ 16-18). Officer Hernandez, who was also on duty, became involved in the chase. (Doc. 14, ¶ 20). At one point during the chase, Officer Leonard's cruiser and the Dodge Ram collided. (Doc. 14, ¶¶ 21-23). After this collision, Vargas sped away, and the chase continued. (Doc. 1-2, ¶¶ 20-30). The chase ended when Vargas lost control of the Dodge Ram on an exit ramp, causing the vehicle to roll over several times before coming to a stop in a snowy field. (Doc. 14, ¶¶ 20-31). As the Dodge Ram was rolling over, Garcia was ejected from the vehicle and launched through the air before crashing into the snowy ground with his pants around his ankles. (Doc. 14, ¶¶ 31-33). Arriving at the scene shortly after the crash, Police Defendants attempted to place Garcia under arrest. (Doc. 14, ¶¶ 34-35). Police Defendants grabbed Garcia, who lay limp, stuck in the snow, and attempted to place him in handcuffs. (Doc. 14, ¶¶ 34-38). These attempts were unsuccessful. (Doc. 14, ¶ 38). Officers Leonard and Hernandez next withdrew a stun gun and tasered Garcia. (Doc. 14, ¶ 39). At this point, Garcia was lying face down in the snow in a state of medical distress. (Doc. 14, ¶ 39). Given the severity of his injuries, Garcia was eventually transported to Lehigh Valley Hospital in Allentown, Pennsylvania, where he was scheduled for hip surgery and hospitalized for over two weeks. (Doc. 14, ¶¶ 40-41).

On March 1, 2024, Garcia filed the instant lawsuit, and on March 8, 2024, the case was removed to this Court. (Doc. 1). On December 12, 2024, Garcia filed the operative amended complaint. (Doc. 14). Therein, Garcia alleges the following Counts: Count One – 42 U.S.C. § 1983: False Arrest against Officers Leonard and Hernandez; Count Two – 42

2

U.S.C. § 1983, Excessive Force against Officers Leonard and Hernandez; Count Three – 42 U.S.C. § 1983, Malicious Prosecution against Officer Leonard; Count Four – 42 U.S.C. 1983, State Created Danger; Count Five – 42 U.S.C. § 1983, *Monell* Liability against City of Hazleton; Count Six – Assault against Officers Leonard and Hernandez; Count Seven – Battery against Officers Leonard and Hernandez; Count Eight – False Arrest and False Imprisonment against Officers Leonard and Hernandez; Count Nine – State Law Malicious Prosecution against Officer Leonard; Count Ten – Negligence against Officers Leonard and Hernandez; Count Eleven – Negligence against Vargas; and Count Twelve – Negligent Entrustment against Castillo. (Doc. 1-2).

On December 30, 2024, Hazleton Defendants filed the instant motion to dismiss and a brief in support of their motion. (Doc. 16; Doc. 17). On January 6, 2025, Garcia filed a brief in opposition to the motion to dismiss. (Doc. 17). The deadline to file a reply brief has passed. Accordingly, the motion has been fully briefed and is ripe for discussion.

## II. LEGAL STANDARD

### A. MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents

incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for

4

which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

B.  SECTION 1983

Hazleton Defendants are state actors for purpose of Section 1983. *See Kline ex rel. Arndt v. Mansfield*, 454 F. Supp. 2d 258, 262 (E.D. Pa. 2006). To state a claim under Section 1983, a plaintiff must meet two threshold requirements. Accordingly, in this case, Garcia must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). If a defendant fails to act under color of state law when engaged in the alleged misconduct, a civil rights claim under [S]ection 1983 fails as a matter of jurisdiction, *Polk Cty. v. Dodson*, 454 U.S. 312, 315 (1981), and there is no need to determine whether a federal right has been violated. *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988); *see also Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) (citing *Rode*, 845 F.2d at 1207). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207; *accord Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293-96 (3d Cir. 1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995). As explained in *Rode*:

A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207.

With respect to punitive damages for a Section 1983 violation, this remedy is only available "when the defendant's conduct is shown to be motivated by an evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30 (1983). Regarding federal civil rights claims, "reckless indifference" refers to the defendant's knowledge of the illegality of his actions, not the egregiousness of his actions. *Alexander v. Riga*, 208 F.3d 419, 431 (3d Cir. 2000) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)).

## III. DISCUSSION

Hazleton Defendants assert that Garcia's claims for state-created danger against Officers Leonard and Hernandez and *Monell* liability against Hazleton must be dismissed for failure to allege sufficient supporting facts. (Doc. 17, at 3). Hazleton Defendants also argue that Garcia's state law malicious prosecution claim against Officer Leonard should be dismissed for failure to timely assert it. (Doc. 17, at 3). Garcia argues that none of these challenged claims are subject to dismissal. (Doc. 18). The Court will address each in turn.

### A. STATE-CREATED DANGER

Hazleton Defendants argue that Count Four of the amended complaint, Garcia's state-created danger claim, must be dismissed because he has failed to allege that Police Defendants acted with an intent to harm. (Doc. 17, at 7). Garcia avers that Hazleton Defendants are

6

wrong and that they "do not identify which element or elements they believe are missing from the facts alleged in the Amended Complaint." (Doc. 18, at 8-9).

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." "Generally, the Due Process Clause does not impose an affirmative duty on the state to protect its citizens from harms caused by other private citizens or themselves." *Hromek v. Borough of Exeter,* No. 3:23CV549, 2024 WL 4217031, at *3 (M.D. Pa. Sept. 17, 2024). However, when it is the state that places a person in danger it created, the state has a duty to protect against that danger. *Mears v. Connolly*, 24 F.4th 880, 883 (3d Cir. 2022) ("when it affirmatively places a person in a position of danger that the person would not otherwise have faced .... Then, the government must protect people from the dangers it created."). Under a theory of "state-created danger," a plaintiff may sue under Section 1983 to recover from state actors who "affirmatively acted to create plaintiffs' [sic] danger, or to render him or her more vulnerable to it." *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1374 (3d Cir. 1992). To establish a state-created danger claim, a plaintiff must show:

> (1) The harm ultimately caused was foreseeable and fairly direct
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

> *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 170 (3d Cir. 2017) (quoting *Bright*, 443 F.3d at 281 (brackets omitted).

"Liability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger." *Middle Bucks Area Vo.*

*Tech. School*, 972 F.2d at 1374; *see also Bright v. Westmoreland Cnty.*, 443 F.3d 276, 282 (3d Cir. 2006). To succeed on a state-created danger claim, all four elements must be satisfied. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).

At issue here is element two, whether Garcia has alleged that Police Defendants "acted with a degree of culpability that shocks the conscience." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018). "The level of culpability required 'to shock the contemporary conscience' falls along a spectrum dictated by the circumstances of each case. *Sauers*, 905 F.3d at 717 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847-49 & n.8 (1998)). In cases where it is alleged that a police officer acted in a "highly pressurized environment," a plaintiff must allege the officer acted with an intent to harm in order to satisfy the conscious shocking element. *Sauers*, 905 F.3d at 717; *Haberle v. Troxell*, 885 F.3d 170, 177 (3d Cir. 2018). If the police officer took actions "within a time frame that allows an officer to engage in 'hurried deliberation,'" and those actions show that the officer had a conscious disregard of a serious risk, then those actions will satisfy the conscious shocking element. Next are actions taken within a time frame that allows an officer to engage in "hurried deliberation." *Sauers*, 905 F.3d at 717-18 (citation omitted). When those actions "reveal a conscious disregard of a great risk of serious harm" they will be sufficient to shock the conscience. *Sauers*, 905 F.3d at 717-18.

Despite Hazleton Defendants' argument otherwise, the Court finds that the events as described in the amended complaint do not portray the type of "highly pressurized environment" which would necessitate an allegation that Police Defendants acted with an intent to harm. (Doc. 14, ¶¶ 14-31). Instead, consistent with Third Circuit precedent cited by Hazleton Defendants, this Court agrees with Garcia that "[o]ur case law is clear that this

'shocks the conscience' framework for analysis applies to police-pursuit cases." *Sauers*, 905 F.3d at 717-18 (citing *Brown v. Pa. Dep't of Health & Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 480 (3d Cir. 2003) and *cf. Kedra v. Schroeter*, 876 F.3d 424, 432, 448 (3d Cir. 2017)); *see also Velasquez v. City of Wilkes-Barre,* No. 3:22CV125, 2024 WL 1333378, at *4 (M.D. Pa. Mar. 28, 2024). Garcia asserts chasing a vehicle at an 80-100 mile per hour speed due to the violation of "vehicle law," constitutes "a conscious disregard of a great risk of serious harm." (Doc. 18, at 11-12). At this stage of the litigation and construing the amended complaint in a light most favorable to Garcia, this Court finds it would be premature to dismiss his state-created danger claim. *See Velasquez*, 2024 WL 1333378, at *4. Hazleton Defendants' motion to dismiss Count Four of the amended complaint is therefore **DENIED**. (Doc. 14, ¶¶ 109-119; Doc. 16).

## B. *MONELL* LIABILITY

Hazleton Defendants seek dismissal of Garcia's *Monell* claim on the basis that he has failed to support his assertion that Hazleton has a policy or custom of initiating charges and arresting individuals without probable cause and using excessive force with any new facts. (Doc. 17, at 8). Garcia responds that he has sufficiently alleged a *Monell* claim, specifically as it relates to Hazleton's policy of permitting dangerous high-speed police pursuits. (Doc. 18, at 2). While municipalities and other local governments are considered "persons" for purposes of Section 1983 liability, they cannot be held responsible for every constitutional tort inflicted by their employees. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Municipalities are responsible only for "their *own* illegal acts" and are not subject to *respondeat superior* liability. *Connick*, 563 U.S. at 62 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). To bring a Section 1983 claim against a

municipality, also what is known as a *Monell* claim, the plaintiff must show that "the alleged constitutional transgression implements or executes a policy, regulation[,] or decision officially adopted by the governing body or informally adopted by custom." *Mulholland v. Gov't Cty. of Berk*s, 706 F.3d 227, 237 (3d Cir. 2013) (citation omitted). In other words, a plaintiff can establish Section 1983 municipal liability in two ways: policy or custom. *Watson v. Abington Township*, 478 F.3d 144, 155 (3d Cir. 2007). The Third Circuit has explained that to prove liability, the plaintiff must establish that the municipal policy or custom was itself unconstitutional or was the "moving force" behind the constitutional deprivation. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citation omitted). However, at the motion to dismiss stage, "the Third Circuit has held that requiring plaintiffs to identify a particular policy responsible for the underlying constitutional deprivation and to attribute that policy to a specific policymaker at the motion to dismiss stage, before discovery, is 'unduly harsh.'" *Thomas v. Harrisburg City Police Dep't*, No. 20-1178, 2021 WL 4819312, at *11 (M.D. Pa. Oct. 15, 2021) (reversed in part on other grounds); *see Carter v. City of Philadelphia*, 181 F.3d 339, 357-58 (3d Cir. 1999). "Accordingly, district courts in this circuit often do not require plaintiffs to allege the specific policies, procedures, customs, or training protocols that led to their injury until litigation has reached its later stages." *Thomas*, 2021 WL 4819312, at *11.

As it relates to Hazleton's handling of high-speed police chases, Garcia has supported his *Monell* claim with numerous allegations. (Doc. 14, ¶¶ 58-91). Garcia alleges that Hazleton maintains a "look-good written policy" regarding high-speed police pursuits that is not customarily enforced. (Doc. 14, ¶¶ 69-91). He further argues that "Hazleton's real policy, or its custom, is that the [look-good written policy] need not be followed, and reports that the writing says are required are not in fact required," (Doc. 14, ¶¶ 69-91). This allegation is

supported by numerous facts and examples in the amended complaint. (Doc. 14, ¶¶ 69-91). Furthermore, Garcia alleges that despite strict reporting requirements set forth in the looks-good written policy, officers in Hazleton routinely shirk their reporting duties and receive no discipline. (Doc. 14, ¶¶ 69-75). Garcia also alleges that those who fail to follow other policy requirements are rarely disciplined and are not adequately supervised or instructed on how to improve. (Doc. 14, ¶¶ 74-91). As a result, "several officers employed by [Hazleton] have engaged in reckless and dangerous police pursuits," which have resulted in injury. (Doc. 14, ¶ 86). At this early stage in the litigation, the Court finds Garcia's allegations of a "look-good written policy" are sufficient to proceed to discovery, as Garcia's injuries resulted directly from the alleged poor enforcement of the policy. (Doc. 14, ¶¶ 69-91). To the extent that Hazleton Defendants seek dismissal of Garcia's *Monell* claim premised on their handling of police pursuits, their motion is **DENIED**. (Doc. 16).

Reviewing Garcia's *Monell* claim as it relates to Hazleton's initiating charges and arresting individuals without probable cause and using excessive force, the Court agrees with Hazleton Defendants that Garcia's claims are overly generic. Without supporting facts, Garcia alleges only that:

> 122. Defendant Hazleton has a policy of custom of arresting individuals without probable cause.
>
> 123. Defendant Hazleton has a policy of custom of using excessive force.
>
> 124. Defendant Hazleton has a policy or custom of initiating charges against individuals without probable cause and without investigating suspected crimes.
>
> (Doc. 14, ¶¶ 122-124).

Even considering the early stage of this case, these general allegations do not support the existence of an official municipal policy that caused Garcia's injury on these bases. To the

extent that Garcia's *Monell* claim is based on Hazleton's initiating charges and arresting individuals without probable cause and using excessive force, Hazleton Defendants' motion to dismiss is **GRANTED** and the claim is **DISMISSED with prejudice**. (Doc. 14, ¶¶ 122-24; Doc. 16).

    C. STATE LAW MALICIOUS PROSECUTION

Hazleton Defendants aver that Count Nine of the amended complaint, Garcia's state law malicious prosecution claim, is untimely and therefore must be dismissed. (Doc. 17, at 7). Citing 42 Pa.C.S.A. §5524, Hazleton Defendants assert that "[a]ny state law claims for malicious prosecution must have been brought within two years." (Doc. 17, at 7). Hazleton Defendants also argue that because Garcia was previously extended leave to amend just his federal malicious prosecution claim, as well as his *Monell* claim, Garcia was not "explicitly permit[ted] a new count for state law malicious prosecution. As such it must be dismissed with prejudice." (Doc. 17, at 8). Garcia responds that his new state law malicious prosecution claim should not be dismissed. (Doc. 18, at 14). He argues that because only facts, not legal theories, must be pled in a complaint, by alleging his federal malicious prosecution claim within the requisite two-year period, he "thus always pled a state law malicious prosecution claim." (Doc. 18, at 14).

Courts may grant leave to parties to amend their complaint when doing so "will aid in presenting the merits" of the claim and will not prejudice the opposing party. FED. R. CIV P. 15(B)(1). Rule 15 is to be interpreted broadly, in conjunction with Rule 8(a), to prevent "civil cases from turning on technicalities." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1215, p. 172 (3d ed. 2004). Here, the Court granted Garcia leave to file an amended complaint to address pleading deficiencies related to his federal malicious

prosecution claim. (Doc. 12; Doc. 13). Under Rule 15(c), there are circumstances under which a Court may treat a later-filed amended pleading as if it had been filed at the time of the initial pleading. *See Pennsylvania Transportation Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 344-45 (3d Cir. 2021). "Rule 15(c) provides that an amended pleading 'relates back to the date' of the initial pleading when, among other things, 'the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.'" *Orrstown Fin. Servs. Inc.*, 12 F.4th at 344-45 (quoting Fed. R. Civ. P. 15(c)(1)(B)). Because Garcia's state law malicious prosecution claim involves the same conduct and occurrence as his federal malicious prosecution claim, the Court finds his state law malicious prosecution claim sufficiently relates back to the original complaint such that there is no statute of limitations issue with this Court allowing it to remain in the amended complaint. (Doc. 14). Looking purely at the facts supporting his state law malicious prosecution claim, the Court also agrees that, while not explicitly listed as a count in the complaint, "Garcia [] always pled [his] state law malicious prosecution claim." (Doc. 18, at 14). Finally, while this Court did not explicitly allow Garcia to add this claim to his amended complaint, the Court finds it in the interests of justice to allow it now, to avoid an issue further into this litigation such as a request for a special verdict question or another amended pleading. Accordingly, Hazleton Defendants' motion to dismiss Count Nine of the amended complaint, Garcia's state law malicious prosecution claim is **DENIED**. (Doc. 14, ¶¶ 136-43; Doc. 16).

## IV. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment

would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Here, the Court will dismiss a portion of Garcia's *Monell* claim with prejudice. Garcia was previously given the opportunity to correct the deficiencies with his *Monell* claim but failed to do so. The Court will not extend Garcia leave to amend this claim again.

## V. CONCLUSION

For the foregoing reasons, Hazleton Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. (Doc. 16). Hazleton Defendants' motion is **DENIED** as it relates to Garcia's state-created danger claim, state law malicious prosecution claim, and *Monell* claim to the extent that it is premised on Hazleton's handling of police pursuits. (Doc. 16). Hazleton Defendants' motion to dismiss is **GRANTED** as is relates to the rest of Garcia's *Monell* claim, which is **DISMISSED with prejudice**. (Doc. 16). This matter will proceed on the remaining claims in the amended complaint. (Doc. 14). Defendants are directed to file an answer to the amended complaint within 21 days.

An appropriate Order follows.

Dated: June 11, 2025                              s/*Karoline Mehalchick*
                                                          **KAROLINE MEHALCHICK**
                                                          **United States District Court Judge**